UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VERA Y. WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-290-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Vera Y. Warren seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her supplemental security income and erred by failing to incorporate all of her limitations into her residual functional capacity and by failing to logically articulate the limitations in her residual functional capacity.

**BACKGROUND**

On August 20, 2013, the Plaintiff filed a Title XVI application for supplemental security income, alleging disability beginning on March 28, 1998. (R. 168.) The Plaintiff was found to be under a disability as a result of a previous Title XVI application, but the Social Security Administration determined that her disability abated as of August 1, 2004. (*Id.*) The Plaintiff then filed another Title XVI application in November 2008, which was denied, and a subsequent application in 2010, which was denied on April 23, 2012. (*Id.*) The Plaintiff did not appeal these

denials to the Appeals Council. (*Id.*) As a result, without reopening her prior applications—which the ALJ has stated there is no basis to do—she cannot be found disabled prior to April 24, 2012. (R. 169.)

The Plaintiff's present claim was denied initially on November 14, 2013, and upon reconsideration on January 9, 2014. (R. 168.) On July 9, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge. (*Id.*) Marie N. Kieffer, an impartial vocational expert, also appeared at the hearing. (*Id.*) On September 14, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled since the date of her application, August 20, 2013.[1] (R. 168–90.) On May 12, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On July 11, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

---

[1] Although the Plaintiff could have been eligible for disability benefits dating back to April 24, 2013, supplemental security income is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her application date, August 20, 2013. (R. 171.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including fibromyalgia, osteoarthritis, asthma, obesity, hyperlipidemia, a recent occurrence of trochanteric bursitis, and a history of gunshot wounds with residual effects in the joints. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged impairments were not severe impairments.

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work,"

§ 416.920(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a). The ALJ found that her capacities were further reduced in that:

> [A]lthough she can stand and walk for two hours out of an eight-hour workday, she needs to use a cane for prolonged ambulation and walking on uneven surfaces. Otherwise, the claimant can sit for at least six hours during an eight-hour workday. She can work and reach overhead on an occasional basis and is able to frequently and occasionally lift, carry, push and pull ten pounds. As to postural changes, she can climb ramps and stairs; balance; use foot controls, and bend and stoop, in addition to is required to sit, on occasional basis, but can never kneel, crouch, crawl or climb ladders, ropes, or scaffolds. With respect to her work environment, the claimant must avoid frequent exposure to excessive and extreme heat, cold, humidity, and pulmonary irritants including fumes, odors, dusts, gases and poorly ventilated areas. The claimant cannot work on vibrating surfaces or with vibrating tools such as a sander; within close proximity to open/unprotected heights or open/dangerous moving machinery; or upon slippery surfaces outside of occasional use of ramps and stairs or upon uneven surfaces. She is not to drive motor vehicles.

(R. 176–77.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her application date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 177.)

The Plaintiff has no past relevant work. (R. 189.) Relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the

claimant can perform." (*Id*.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her application date. (R. 190.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to account for all of her medically determinable impairments when determining her RFC and by failing to logically articulate the limitations present in the Plaintiff's RFC.

### A.    Medically Determinable Impairments

The Plaintiff argues that the ALJ did not include limitations in the RFC regarding her idiopathic peripheral neuropathy, which causes nerve pain, references to which are scattered throughout the record. She argues that the nature of this impairment would result in limitations regarding feeling, grasping, and gripping. The Commissioner responds that many of the references to which the Plaintiff points were not before the ALJ; the records that were before the ALJ did not indicate that the Plaintiff's nerve pain was an ongoing issue; the ALJ properly evaluated the Plaintiff's nerve pain even if he failed to mention the diagnosis by name; and the

Plaintiff's assertions regarding the limitations resulting from the nerve pain are entirely speculative and would require the ALJ to impermissibly "play doctor."

The Commissioner is correct that the ALJ "cannot be faulted for failing to consider evidence that was before not him," but "the record shows that the ALJ had before him evidence pertaining to [the Plaintiff's] [impairment]" at the time of his decision. *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). The record indicates that the Plaintiff's "current" medication includes Neurotin/gabapentin due to nerve damage and that she reported pain and numbness in her hand to her physician. (*See, e.g.*, R. 567, 676, 777.) Idiopathic peripheral neuropathy is also specifically referenced in the Plaintiff's medical records multiple times, and there are records besides those that the Plaintiff cites that indicate that it is an ongoing condition. (*See, e.g.*, R. 676, 682, 715–17, 719–20.) Thus, the Court finds that the ALJ should have considered the Plaintiff's neuropathy in determining her RFC.

The next question is whether the ALJ did, in fact, consider the Plaintiff's neuropathy. The Commissioner argues that the ALJ's opinion demonstrates that he considered the Plaintiff's neuropathy even if he did not specifically name it. Rather, the ALJ mentioned that the Plaintiff had nerve pain, that she took Neurontin, and that he considered her treatment records in assessing her hand, arm, and shoulder limitations. (R. 181–82, 185.) The ALJ also cited a handful of examination records, which indicate that the Plaintiff's range of motion and strength in her hands was normal. (R. 186.)

Despite such objective medical findings, the Plaintiff consistently indicated that she was having pain, numbness, or tingling in her left hand and difficulties with simple tasks such as picking up objects. (*See, e.g.*, R. 777, 1086.) However, the ALJ found that the Plaintiff's allegations concerning the limiting effects of her symptoms on her left hand were not entirely

credible because "her treatment records, the objective medical findings, and diagnostic test results do not fully support her claims . . . ." (R. 177.)

To evaluate a claimant's credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186 (July 2, 1996). "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). An ALJ may not make an adverse credibility determination based only on conflicts with the objective medical evidence. The Seventh Circuit, and this District, have rejected such an approach. *See, e.g.*, *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Vercel v. Colvin*, No. 2:15-CV-81, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6). In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original). The ALJ offered no further reasons for discounting the Plaintiff's

credibility regarding the intensity, persistence, and limiting effects of her impairments. Thus, the Court cannot determine that the ALJ properly considered the evidence of record. Rather, the Court finds that the ALJ failed to build a logical bridge between the evidence regarding the Plaintiff's neuropathy and his conclusions regarding her RFC. The Court also notes that there is evidence of the Plaintiff's functional limitations—her testimony and reports to her doctor—that would not require the ALJ to speculate and impermissibly "play doctor."

### B. Logical Inconsistencies in the RFC

Turning to the Plaintiff's RFC, the Court agrees that it contains logical inconsistencies. The last sentence of the RFC provides that the Plaintiff "cannot work . . . upon slippery surfaces outside of occasional use of ramps and stairs . . . ." (R. 176–77.) The Commissioner argues that this statement is clear because "it contemplates that ramps and stairs may be slippery at times, and limits Plaintiff to *no work* on such surfaces outside of occasionally." (*See* Comm'r Br. 8, ECF No. 19.) However, this is precisely the point. This limitation would allow her to "occasionally" do work on slippery ramps and stairs. "Occasionally" is a defined term that means a claimant can engage in an activity or be subject to a condition for up to one-third of the workday. This is logically inconsistent with other parts of the Plaintiff's RFC, which require that she must use a cane for prolonged ambulation, that she can stand and walk for only two hours out of an eight-hour workday, and that she can do no work on any slippery surfaces, which would include even flat surfaces. This is logically inconsistent with a limitation that permits occasional work on slippery ramps and stairs.

The RFC is also problematic with regard to the Plaintiff's postural limitations. The RFC limits the Plaintiff's postural changes as follows: "[s]he can climb ramps and stairs; balance; use

9

foot controls, and bend and stoop, in addition to is required to sit, on occasional basis . . . ." The Court notes that the Commissioner has slightly altered this sentence in its brief, possibly to clarify what it believes the ALJ meant by "in addition to is required to sit." The Commissioner's version states that the Plaintiff can "climb ramps and stairs, balance, use foot controls, bend, stoop, and sit on an occasional basis . . . ." (*See* Comm'r Br. 3.) Even if this is an accurate representation of how the ALJ intended this limitation to read—and the Commissioner has not offered any argument in support of such a contention—this limitation is inconsistent with other parts of the RFC. Specifically, this limitation contemplates that the Plaintiff can sit only occasionally (up to one-third of the workday), but the ALJ limited the Plaintiff to sedentary work and found that she could sit for "at least six hours during an eight-hour workday." (R. 176.)

The Court notes that the Seventh Circuit gives an ALJ's opinion a "commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). "But, rejecting an opinion that expresses an RFC in inconsistent ways is far from nitpicking: it is a recognition that the opinion contains internal contradictions that are fatal to meaningful review." *Pickett v. Barnhart*, No. 04 C 522, 2004 WL 1535847, at *9 (N.D. Ill. July 7, 2004) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Without understanding what findings the ALJ actually made regarding these limitations, the Court is unable to review them.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. On remand, the ALJ should ensure that he adequately evaluates the Plaintiff's credibility so that it may be given the appropriate weight in determining her limitations. The ALJ should also ensure that the Plaintiff's

RFC is clearly articulated such that the parties, and the Court, can fully understand the limitations.

SO ORDERED on April 17, 2018.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT